IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Paul H. TITUS & Bonnie Titus,<br>          Appellants<br>          Cross-Appellees<br><br>          v.<br><br>Robert SHEARER,<br>Trustee for the Chapter 7 Bankruptcy<br>Estate of Paul Titus,<br>          Appellee<br>          Cross-Appellant. | Civil Nos. 17-479, 17-548<br><br>(Bankruptcy No. 10-23668)<br>(Adversary Proceeding No. 10-2338) |

**OPINION**

CONTI, Chief District Judge

I.      Introduction

The long-running saga precipitated by the Titus and McConomy law firm's breach of its lease agreement in 1999 continues.[1] Now pending before the court are a second set of cross-appeals (Case No. 17-479, ECF No. 8; Case No. 17-548, ECF No. 5) by Robert Shearer, the Trustee for the Chapter 7 Bankruptcy Estate of Paul Titus (the "Trustee") and Paul Titus and his wife Bonnie Titus (together, the "Tituses") from the bankruptcy court's judgment order dated March 31,

---

1      The breakup of Titus & McConomy and the subsequent attendant litigation spawned several other bankruptcy adversary proceedings dealing with many of the same issues. See Cardiello v. Arbogast (In re Arbogast), 466 B.R. 287 (Bankr. W.D. Pa. 2012), aff'd 479 B.R. 661 (W.D. Pa. 2012), aff'd Nos. 12-3866, 12-3867, 12-3868, 2013 WL 4007772 (3d Cir. Aug. 7, 2013); Cohen v. Sikirica (In re Cohen), Adversary No. 07-2517, 2012 WL 5360956 (Bankr. W.D. Pa. Oct. 31, 2012), aff'd in part, rev'd in part, 487 B.R. 615 (W.D. Pa. 2013); Shearer v. Oberdick (In re Oberdick), 490 B.R. 687, 703 (Bankr. W.D. Pa. 2013); Sikirica v. Wettach (In re Wettach), 489 B.R. 496 (Bankr. W.D. Pa. 2013), aff'd 811 F.3d 99 (3d Cir. 2016).

2017, and entered on April 3, 2017, after remand. (the "April 3, 2017 Order," App'x J). [2] The appeals are fully briefed and ripe for disposition.

## II.    Procedural History

The extensive procedural history is well known to the parties and will not be recounted in full. Certain aspects of the procedural history, however, are important to the issues raised in the cross-appeals.

### A.  The first bankruptcy court proceeding

On February 29, 2012, the bankruptcy court issued a lengthy opinion (the "2012 BR Opinion," App'x A) in which the bankruptcy court concluded that the direct deposits of Paul Titus' wages into a checking account held with his wife as tenants by the entireties constituted constructively fraudulent transfers under the Pennsylvania Uniform Fraudulent Transfer Act ("PUFTA"), 12 Pa. Cons. Stat. §§ 5101-5110, unless they were used to pay for "reasonable and necessary household expenses" (i.e., "necessities"). The bankruptcy court placed the burden of persuasion that funds were not used for necessities on the Trustee, although it placed the burden to produce some useful evidence on the Tituses, and limited the time frame for the recovery of constructively fraudulent transfers to the four-year period from April 23, 2003 to April 23, 2007. The bankruptcy court entered judgment in favor of the Trustee for $281,006.18.

### B.  The first cross-appeals to the district court

Both sides appealed the decision of the bankruptcy court. The Trustee appealed the bankruptcy court's failure to include transfers made after April 23,

---

[2] The parties submitted a Joint Appendix at Case No. 17-479, ECF No. 9, which includes the relevant prior opinions and orders. The court will cite to the Joint Appendix.

2007 to June 30, 2010 in determining the time frame for recovering constructively fraudulent transfers and the allocation of the burdens of persuasion and production. Specifically, the Trustee argued that the bankruptcy court erred by allocating the burden to the Trustee to prove that the wages were not used for necessities. The Trustee argued that the Tituses should have the burden to prove, as an affirmative defense, that those funds were used for necessities. The Trustee did not challenge the 2012 BR Opinion's analysis relating to an offset for nonwage deposits (explained or unexplained) into the checking account. (*See* Trustee's Appeal, Case No. 12-1560, ECF No. 5).

The Tituses pointed to five purported errors by the bankruptcy court in their first appeal: (1) not following the decisions made by the state trial court before removal when determining the applicable legal standards; (2) imposing a burden of producing evidence about account expenditures and deposits on the Tituses and the timing of imposing this burden unfairly prejudiced the Tituses; (3) calculating the amount of liability because there was insufficient evidence to support its finding that certain unidentified deposits were from Mr. Titus's wages; (4) finding that a "transfer" occurred pursuant to PUFTA, and that the Tituses may be jointly and severally liable as "transferees"; and (5) finding liability because Mr. Titus's liability was discharged in the bankruptcy proceedings.

## C. The district court's first opinion

On September 30, 2013 (the "September 30, 2013 Opinion," App'x C), this court affirmed in part and vacated in part the 2012 BR Opinion and remanded the adversary proceeding for further consideration. Specifically, this court disagreed with the bankruptcy's court's limitation to a four-year look-back period and directed it on remand to decide whether the Trustee may recover

constructively fraudulent transfers from April 23, 2007, to May 28, 2010. This court affirmed that the Trustee could recover any funds not spent on necessities, not just those used for luxuries; affirmed the bankruptcy court's assignment of the burden of persuasion to the Trustee on all elements of the claim, including whether funds were spent on necessities; and affirmed that the Tituses had the burden to produce "at least some useful evidence" regarding the deposits and withdrawals from the checking account. This court held that the bankruptcy court erred, however, by failing to give the Tituses notice or opportunity to meet their burden of production and remanded to allow them to produce evidence about unexplained deposits and expenditures.

D.  The remand in the bankruptcy court

After considerable proceedings on remand, the bankruptcy court issued a thoughtful and thorough opinion (the "2017 BR Opinion", App'x I) and entered a judgment order in favor of the Trustee for $273,862.68. (App'x J). The bankruptcy court concluded that the transfers made from April 23, 2003 to May 28, 2010 could be subject to recovery and the same methodology[3] used in the first trial must be used again. The bankruptcy court applied that same methodology to the new evidentiary record. The bankruptcy court (based on stipulations by the parties) grouped deposits into the checking account into three categories: (1) wages of $1,125,255.58; (2) explained nonwages of $634,998.83; and (3) unexplained nonwages of $268,167.09. The bankruptcy court grouped withdrawals from the checking account into three categories: (1)

---

[3]   The bankruptcy court called its methodology the "Other Deposit" Methodology, which the Trustee refers to as the "Non-Necessities Approach." The Trustee advocates the "Total Transfer Approach," which the bankruptcy court referred to as the "Other Deposit Irrelevant" methodology. For clarity and consistency, this court will adopt the naming conventions used by the bankruptcy court.

conceded necessities; (2) conceded non-necessities; and (3) unknown or disputed transactions. The bankruptcy court resolved the disputed transactions and found that the withdrawals from the account consisted of: (1) necessities of $1,134,000.67; and (2) non-necessities of $1,000,133.51 (including the unknown transactions). On appeal, neither side challenges the bankruptcy court's factual findings about the disputed withdrawals.

Applying the Other Deposit Methodology, the bankruptcy court found that the non-necessities could be offset by the amount of the explained nonwages and by the original balance in the account ($1,000,133.51 less $634,998.83 less $91,272.00 = $273,862.68). The bankruptcy court entered judgment in favor of the Trustee and against the Tituses for $273,862.68.

E. The pending cross-appeals to the district court

The Trustee's appeal raises several related issues: (1) the bankruptcy court should have used the Other Deposit Irrelevant methodology on remand; (2) the Trustee did not waive his right to argue for the Other Deposit Irrelevant methodology by not raising it in the first appeal; (3) the Other Deposit Irrelevant methodology is not mandated by the law of the case; and (4) the Third Circuit Court of Appeals' intervening decision in Sikirica v. Wettach, 811 F.3d 99 (3d Cir. 2016), mandates use of the Other Deposit Irrelevant methodology. Essentially, the Trustee argues that once he establishes that Paul Titus' wages were transferred into the entireties checking account, a rebuttable presumption arises that those funds were not used in exchange for reasonably equivalent value. The Trustee argues that the Tituses failed to meet their burden to produce evidence that the wages were actually used to pay for

necessities and seeks judgment for the entire amount of Paul Titus' wage transfers ($1,125,255.88).[4]

The Tituses' appeal raises an issue concerning a purported error made by the bankruptcy court when it failed to offset their liability by the amount of unexplained nonwages ($268,167.09). The Tituses argue that the amount of the judgment against them should be $5,695.59.

## III. Factual Background

The parties do not contest the factual background. To summarize:

> The bankruptcy proceedings arose out of the dissolution in 1999 of the Pittsburgh law firm of Titus & McConomy, in which Mr. Titus had been a partner. Titus & McConomy rented office space from Trizechahn Gateway LLC ("Trizec") under a long-term lease agreement. In July 2000, Trizec filed a breach of contract suit against Titus & McConomy's former partners in state court for unpaid rent due under the lease. 467 B.R. at 601. In 2006, the state trial court found Mr. Titus and other Titus & McConomy partners jointly and severally liable in the amount of $2.7 million, which, due to interest and costs, subsequently increased to more than $3 million. Id.
>
> After the dissolution of Titus & McConomy, Mr. Titus worked for the law firm of Schnader Harrison Segal & Lewis ("Schnader Harrison"). Beginning in July 2002, Mr. Titus had Schnader Harrison directly deposit his wages into a checking account he owned with his wife as tenants by the entireties. On April 23, 2007, Trizec filed a fraudulent transfer action against the Tituses in state court in an effort to collect on the judgment. Id. The fraudulent transfer action contained three claims under Pennsylvania's Uniform Fraudulent Transfer Act ("PUFTA"), 12 PA. CONS. STAT. §§ 5101–5110. The first claim is for actual fraudulent transfer under 12 PA. CONS. STAT. § 5104(a)(1), and the second and third claims are for constructive fraudulent transfer under 12 PA. CONS. STAT. §§ 5104(a)(2)(ii) and 5105. Titus, 467 B.R. at 602. In the constructive fraudulent claims it is alleged that the direct deposits by Schnader Harrison into Mr. and Mrs. Titus' checking account constituted constructive fraudulent transfers.

---

[4] In the alternative, the Trustee suggests that the offset for necessities be prorated by the proportion of wage and nonwage deposits into the checking account.

On May 20, 2010, TRZ Holdings, Trizec's parent and successor in interest, filed an involuntary chapter 7 bankruptcy petition against Mr. Titus, who removed the fraudulent transfer action to the bankruptcy court. <u>Id.</u> The bankruptcy court entered an order substituting the Trustee for Trizec as plaintiff in the fraudulent transfer action. <u>Id.</u> The Trustee prosecuted the claims under the authority and derivative standing granted by 11 U.S.C. § 544(b)(1). <u>Id.</u> at 602.

September 30, 2013 Opinion, App'x C at 1-3.

IV.     Jurisdiction and Standard of Review

Federal district courts have appellate jurisdiction over the final judgments, orders, and decrees of the bankruptcy court. 28 U.S.C. § 158(a)(1). When a district court examines a bankruptcy court's decision, "legal determinations are reviewed <u>de novo,</u> factual findings are reviewed for clear error, and discretion is reversed for abuse." <u>Official Comm. of Unsecured Creditors of J. Allan Steel Co. v. Nucor-Yamato Steel Co. (In re J. Allan Steel Co.)</u>, 336 B.R. 226, 228–29 (W.D. Pa. 2005) (citing <u>In re Sharon Steel Corp.</u>, 871 F.2d 1217, 1222 (3d Cir. 1989)). Mixed questions of fact and law must be broken down and reviewed under the applicable standard. <u>First Jersey Nat'l Bank v. Brown (In re Brown)</u>, 951 F.2d 564, 567 (3d Cir. 1991).

V.     Legal Analysis

Because the issues overlap, the court will consider the cross-appeals together. The crux of the disputes relates to who bears the risk arising from the following unknown information: (1) the source of deposits into the account; and (2) the inability to trace deposits into a checking count to specific expenditures from that account. Money is fungible and deposits into a checking account are rarely earmarked for a particular purpose. These dilemmas are addressed in the law by assigning a burden of persuasion and a burden of production. This court resolved the applicable burdens in the first appeal. The bankruptcy court

performed a careful and thorough analysis on remand which was consistent with this court's instructions.

As an initial matter, it is now clear that this court correctly allocated the burdens of persuasion and production. In Wettach, the Third Circuit Court of Appeals affirmed the "consensus view of courts in this circuit." 811 F.3d at 109. The Trustee has the burden of persuasion on all elements of a constructive fraudulent transfer claim under PUFTA, including the need to prove a lack of reasonably equivalent value for the transfers. Id. at 107. Debtors, on the other hand, have the burden to produce at least some useful evidence with respect to the uses of the transferred funds to rebut the presumption against receipt of reasonably equivalent value. Id. at 109. The Third Circuit Court of Appeals viewed the allocation of the burdens as legal issues, but considered the question whether the deposits funded non-necessary expenditures to be an evidentiary finding, which it reviewed for clear error. Id. at 109, 111.

A.  The Trustee's appeal

The Trustee significantly misapprehended the prior opinions in this case. The bankruptcy court properly cited and relied on Skretvedt v. E.I. DuPont De NeMours, 372 F.3d 193, 202-03 & n.13 (3d Cir. 2004) (the interrelated doctrines of appellate waiver, mandate rule, law of the case, and collateral estoppel prevent parties from pursuing on remand arguments that they did not raise or were resolved in the initial appeal).

The issue whether nonwage deposits would reduce the Tituses' liability was part of the first appeal. In relevant part, the bankruptcy court in the 2012 BR Opinion held:

> [I]n order for the Trustee to prevail on his constructive fraudulent
> transfer actions, he must preponderantly prove, in particular, that
> the direct deposits of the Debtor's wages into the Entireties

Checking Account funded the Objectionable Expenditures. Put differently, the Trustee, in order to so prevail, needs to preponderantly prove that no money that was deposited into the Entireties Checking Account during the lookback period other than such indirect wage transfers funded such expenditures."

2012 BR Opinion, App'x A at 51. The bankruptcy court gave the Tituses a full offset for $142,974 in social security (i.e., nonwage) benefits that were deposited into the account, explaining "it is at least as likely as not" that those benefits funded Objectionable Expenditures. Id. at 51-52. The bankruptcy court explained that the Tituses could not have produced any meaningful information to trace the expenditures of the social security benefits and therefore did not impose on them the burden to do so. Id. at 52 n.13.[5]

The Trustee argued in the first appeal that the use of funds to purchase necessities was an affirmative defense, such that the burden should have been on the Tituses to prove that wage deposits were used for necessities. This court rejected the Trustee's argument. It held that the bankruptcy court "correctly place[d] the burden of proving that funds were not used for necessities on the Trustee." September 30, 2013 Opinion, App'x C at 10. This court reiterated that the bankruptcy court's ruling on that issue was affirmed. Id.

That decision was not subject to reconsideration after the remand to the bankruptcy court or in this second appeal. The Trustee never challenged the use of the Other Deposit methodology. Consideration of a different methodology was never part of this court's mandate to the bankruptcy court on remand.

The Trustee's reliance on Wettach is misplaced. The Wettach decision did not discuss, much less mandate, use of the Other Deposit Irrelevant methodology rather than Other Deposit methodology. To the extent that Wettach is on point, it actually undercuts the Trustee's position. The

---

[5] The bankruptcy court noted on remand that the impact of nonwage deposits into the checking account was also "brought front and center" by the Tituses' motion to alter or amend the 2012 judgment. *See* 2017 BR Opinion, App'x I at 21-22.

bankruptcy court in <u>Wettach</u> offered the debtors a "dollar-for-dollar reduction against any liability" for nonwage deposits into the account. The Third Circuit Court of Appeals recognized that this offset was given, without criticism. 811 F.3d at 111.

Regardless of the procedural history, use of the Other Deposit methodology was appropriate under the facts and circumstances of this case. The bankruptcy court ultimately made factual findings on all expenditures from the checking account, which neither side appealed. The bankruptcy court found on remand that the Tituses explained the source of most of the nonwage deposits. This was entirely consistent with the instruction of this court that the Tituses be given the opportunity to do so. *See* September 30, 2013 Opinion, App'x C at 25 ("On remand, the Tituses may produce evidence about the unexplained deposits . . . ."). The Trustee's proposed Other Deposits Irrelevant methodology would require the bankruptcy court to ignore this further factual development and is entirely contrary to this court's instruction on remand.[6]

The crux of the Trustee's argument is that all non-necessities should be presumed to be purchased with wages. The bankruptcy court found the opposite -- that all non-necessities were purchased with explained nonwages. The bankruptcy court's finding is consistent with the burden of persuasion. The Trustee failed to convince the factfinder that the non-necessities were purchased with wages and therefore failed to prove that portion of his PUFTA claim. In sum, the bankruptcy court's finding was not erroneous.

B. <u>The Tituses' appeal</u>

---

[6] The bankruptcy court refused to give the Tituses a setoff for the unexplained nonwages, which redounded to the Trustee's benefit.

The Tituses' appeal also lacks merit. The treatment of nonwage deposits was raised and resolved by this court in the first appeal. The bankruptcy court credited $142,974.00 of Mrs. Titus's social security benefits, but declined to deduct unexplained deposits from the objectionable expenditures. The Tituses argued in their first appeal that the bankruptcy court failed to credit the full amount of nonwage deposits into the entireties account against the "objectionable expenditures."

In the September 30, 2013 Opinion, this court recognized that the bankruptcy court "declined to deduct unexplained deposits from the objectionable expenditures" and stated: "The court agrees with this analysis." App'x C at 18-19. Quoting from Cohen, 487 B.R. at 625, this court explained that placing the burden of production on the Tituses would incentivize them to come forward with information and prevent them from avoiding judgment merely by placing untraceable funds into the account. Id.

The bankruptcy court was not instructed on remand to reconsider placing the burden of persuasion on the Tituses. The Tituses were given an opportunity on remand "to produce evidence about the source of the unknown funds," not to relitigate the methodology which this court had already affirmed. App'x C at 19 (emphasis added). This issue is not a proper subject of the instant appeal.

Keeping the burden of production on the Tituses is consistent with the law and common sense. By definition, they failed to meet their burden of production on the "unexplained" nonwage deposits. The presumption that those deposits did not receive reasonably equivalent value, therefore, was not overcome. The Tituses were certainly in a better position than the Trustee to determine the source of the unexplained deposits. Even if they were "nonwage," the unexplained deposits could have represented constructive (or actual) fraudulent transfers. For example, if Paul Titus individually owned a rare painting, sold it

11

for $268,167.09, and deposited the proceeds into the entireties checking account, those funds could not be used to offset objectionable expenses. *See* 2017 BR Opinion, App'x I at 19 n.8. The bankruptcy court's finding with respect to unexplained nonwages was not erroneous.

VI.     Conclusion

For the reasons set forth above, the court finds after de novo review that the legal holdings of the bankruptcy court about the burden of persuasion and the burden of production are correct and its factual findings are not erroneous. The Judgment Order dated March 31, 2017 and entered April 3, 2017 will be affirmed.


An appropriate order will be entered.


BY THE COURT:

/s/ Joy Flowers Conti
Joy Flowers Conti
Chief United States District Judge

Dated: November 14, 2017

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

Paul H. TITUS & Bonnie Titus,
  Appellants
   Cross-Appellees

  v.

Robert SHEARER,
Trustee for the Chapter 7 Bankruptcy
Estate of Paul Titus,
  Appellee
   Cross-Appellant.

Civil Nos. 17-479, 17-548

(Bankruptcy No. 10-23668)
(Adversary Proceeding No. 10-2338)

# ORDER

And now this 14th day of November, 2017, upon consideration of the notices of appeal and the submissions of the parties, and for the reasons set forth in the accompanying opinion,

It is hereby ordered that the order of the bankruptcy court dated March 31, 2017 and entered April 3, 2017, is hereby AFFIRMED.

BY THE COURT:

/s/ Joy Flowers Conti
Joy Flowers Conti
Chief United States District Judge